LANDMARK MOTORS, INC., Appellant–Cross–Plaintiff,

v.

CHRYSLER CREDIT CORPORATION, Appellee–Cross–Defendant.

No. 22A01–9505–CV–131.

Court of Appeals of Indiana.

March 4, 1996.

---

Geoffrey M. Grodner, Kendra Gowdy Gjerdingen, Mallor, Clendening, Grodner & Bohrer, Bloomington, for Appellant.

Ronald R. Fifer, Douglas B. Bates, Stites & Harbison, Jeffersonville, for Appellee.

## OPINION

BAKER, Judge.

Appellant-cross-plaintiff Landmark Motors, Inc. appeals the trial court's judgment in its cross-claim for damages, indemnification, attorneys fees and costs against appellee-cross-defendant Chrysler Credit Corporation. Specifically, Landmark asserts that the trial court erred in concluding that Chrysler did not warrant title to an item purchased by Landmark at an auction.

### FACTS

The undisputed facts most favorable to the judgment are that in 1986, Chrysler entered into a financing agreement with Preston Highway Chrysler/Plymouth, Inc., a car dealership located in Louisville, Kentucky. The agreement gave Chrysler a perfected security interest in all of Preston's equipment, furniture, fixtures, machinery, tools and leasehold improvements. In August of 1990, Preston defaulted on the agreement and thereafter, voluntarily surrendered all of its assets to Chrysler on September 11, 1990. One of those assets was a Wash Pac Unit, which is a car wash manufactured by Brite–O–Matic.

Upon receiving the assets from Preston, Lyla C. Gentry, the manager of the Louisville branch of Chrysler, attempted to verify ownership of the assets by determining which had been leased by Preston and which had been purchased. Gentry interviewed Preston employees, checked the assets for identification and ensured that Chrysler representatives were present at the dealership to receive individuals attempting to assert claims to the assets. In regard to the Wash Pac Unit, Gentry found no markings indicating that it belonged to anyone other than Preston and no one asserted any claims to it.

Subsequently, Chrysler decided to hold an auction to liquidate Preston's assets, including the Wash Pac Unit. Chrysler hired an auctioneer to conduct the auction. The auctioneer distributed fliers advertising the auc-

tion and listing the specific items that were for sale. The fliers also contained a notation disclaiming all warranties and guarantees regarding the items listed for sale. Landmark, who at that time was leasing a Wash Pac Unit from Brite–O–Matic, received one of the fliers and noted that a Wash Pac Unit was advertised for sale. Because it had already decided that it wanted to purchase a Wash Pac Unit, Landmark contacted Brite–O–Matic and offered to buy the unit that it was currently leasing. However, Brite–O–Matic informed Landmark that the unit was not for sale. In response, Landmark told Brite–O–Matic that it intended to buy the Wash Pac Unit being sold at the auction. Brite–O–Matic stated that although it had no knowledge of any units that were for sale, it would supply Landmark with information and the history of the specific Wash Pac Unit it intended to buy at the auction. Landmark declined Brite–O–Matic's offer.

On February 19, 1991, the auction was held. Landmark attended the auction and purchased the Wash Pac Unit for $1,060.00. However, several days after the auction, Brite–O–Matic contacted Chrysler claiming it had title to the Wash Pac Unit. Specifically, Brite–O–Matic asserted that Preston had leased the Wash Pac Unit and thus, did not own it. In turn, Chrysler informed Landmark of Brite–O–Matic's claim and offered to refund Landmark's purchase price in exchange for the return of the Wash Pac Unit. Landmark refused. As a result, on August 15, 1991, Brite–O–Matic filed an action against Chrysler for damages and against Landmark for the return of the unit as well as damages. Thereafter, on September 11, 1991, Landmark filed a cross-claim against Chrysler seeking damages, attorneys fees and costs, indemnification and reimbursement in the event that Brite–O–Matic prevailed on its claim against Landmark. Subsequently, the court granted Brite–O–Matic's motion for replevin of the Wash Pac Unit.

On June 11, 1992, Landmark filed a motion seeking summary judgment on the issue of which party had title to the Wash Pac Unit. Specifically, Landmark argued that it had superior title because it was a bona fide purchaser for value. After holding a hear-

ing, the trial court denied Landmark's motion and granted summary judgment in favor of Brite–O–Matic on the issue of title. Record at 254. Thus, the only issue remaining for trial was whether Landmark was entitled to damages for Chrysler's alleged breach of warranty of title. On November 14, 1994, a bench trial commenced and on December 30, 1994, the trial court entered findings of fact and conclusions of law pursuant to Landmark's request. Specifically, the trial court concluded that:

1. The substantive law of the State of Kentucky applies to this case.

2. Chrysler did not warrant title of the [Wash Pac] Unit to Landmark as a result of the purchase of the Unit at the liquidation auction conducted on behalf of Chrysler.

3. The buyer (Landmark) knew or should have known that the person selling did not claim title in himself and was selling only such a right as [Preston] may have had.

4. This sale by a foreclosing lienor [Chrysler] is out of the course of ordinary commercial sale and the sales (sic) peculiar character is immediately apparent to a perspective (sic) buyer (Landmark).

5. Landmark had actual notice that title was in question prior to its (Landmark's) purchasing the Unit. Therefore, Landmark is estopped from claiming any damages based on a warranty of title.

R. at 460–65. Based upon these conclusions, the court ordered: 1) Landmark to pay Brite–O–Matic $1,144.50 for the rental payments due on another Wash Pac Unit that Landmark had been leasing from Brite–O–Matic, 2) Chrysler to pay Landmark $1,060.00, for the purchase price of the Wash Pac Unit, plus $690.00 for the cost of transporting the unit, and 3) each party to pay its own costs and attorneys fees. Landmark appeals the trial court's judgment claiming that the trial court erred in: 1) concluding that Chrysler did not warrant title to the Wash Pac Unit and that Landmark had actual notice that title was questionable and 2) failing to enter a specific finding regarding Landmark's right to indemnification from Chrysler.

*DISCUSSION AND DECISION*

### I. Standard of Review

 When a court enters special findings of fact and conclusions of law upon a party's motion, we employ a deferential two-tiered standard of review. *W & W Equipment Co., Inc. v. Mink,* 568 N.E.2d 564, 569 (Ind.Ct.App.1991), *trans. denied.* We first determine whether the evidence supports the findings, and then determine whether the findings support the judgment. *Id.* Special findings and the judgment flowing from the findings will be set aside only if they are clearly erroneous. *Id.* at 569–70. In determining whether the findings and judgment are clearly erroneous, this court will neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* We consider only the evidence in the record which supports the judgment along with the reasonable inferences to be drawn therefrom. *Id.* This court will not disturb the trial court's findings unless the record is devoid of facts or inferences to support the findings. *Id.*

### II. Warranty of Title

 First, Landmark claims that the trial court's findings do not support its conclusions that Chrysler did not warrant title to the Wash Pac Unit and that Landmark had actual notice, prior to purchasing the unit, that the unit's title was questionable.[1] We disagree. KY.REV.STAT.ANN. § 355.2–312 [2] provides:

(1) Subject to subsection (2) there is in a contract for sale a warranty by the seller that

(a) the title conveyed shall be good, and its transfer rightful; and

* * * * * *

(2) A warranty under subsection (1) will be excluded or modified only by specific language or by circumstances which give the buyer reason to know that the person selling does not claim title in himself or that he is purporting to sell only such right or title as he or a third person may have.

Here, the trial court specifically found the following. R. at 460–65. Chrysler retained an auctioneer to advertise and conduct the auction sale of several items. The auctioneer mailed fliers advertising the auction sale which contained a notation, "AUCTIONEER'S NOTE: Although information obtained from sources deemed reliable, Auctioneer makes no warranty or guarantee expressed or implied. Buyers should avail themselves of opportunity to make inspection prior to sale." R. at 627. Landmark received one of these fliers which prompted it to attend the auction. In making its decision to attend the auction, Landmark did not contact Chrysler or attempt to inspect or discover information about the Wash Pac Unit. In fact, Landmark flatly declined Brite–O–Matic's offer for information about the Wash Pac Unit being sold at the auction. Finally, at the auction, the auctioneer made an oral disclaimer, informing the bidders, including Landmark, that no express or implied warranties or guarantees were being made regarding the items to be sold. We hold that the circumstances set forth in the court's findings support its conclusions that Landmark had actual notice that title to the Wash Pac Unit was questionable and that Chrysler did not warrant title to the unit.[3] *See Cohen v. North Ridge Farms,*

---

1. We note that Landmark concedes that the evidence supports the trial court's findings. Appellant's Brief at 32.

2. Both parties agree with the trial court's conclusion that the substantive law of the Commonwealth of Kentucky applies in this case. We note that Indiana has also adopted this provision of the Uniform Commercial Code verbatim at IND. CODE § 26–1–2–312.

3. Landmark argues that because in the auction contract Chrysler allegedly warranted to the auctioneer that it had good title to the items being auctioned, R. at 86, Chrysler, in effect, warranted

to Landmark that title was good regardless of the auctioneer's actions in disclaiming the warranty. We note that an auctioneer is an agent of both the seller and the buyer. *Nicholson v. Clark,* 802 S.W.2d 934, 937 (Ky.App.1990). Further, the acts of an agent bind the principal when the agent is acting within the scope of his authority. *Kentucky Home Life Ins. Co. v. Johnson,* 263 Ky. 787, 93 S.W.2d 863 (1936). Here, Landmark has presented no evidence or authority showing that the auctioneer, as Chrysler's agent, was acting outside the scope of his authority in disclaiming the warranty of title, or that Chrysler, as principal, should not be bound by the auctioneer's disclaimer. Hence, we cannot say that the

*Inc.,* 712 F.Supp. 1265, 1274 (E.D.Ky.1989) (buyer at auction sale assumed risk of loss where purchase was pursuant to conditions of sale which expressly disclaimed all warranties).

██ Landmark also claims that the trial court erred in failing to make a finding on the issue of whether Landmark is entitled to indemnification from Chrysler for all damages that Landmark must pay Brite–O–Matic. Generally, when findings have been requested by a party, the trial court is required by law to make findings on all the issues of the case. Ind.Trial Rule 52(D); *Willett v. Clark,* 542 N.E.2d 1354, 1358 (Ind.Ct.App. 1989). Here, Landmark's claim for indemnification was premised upon its breach of warranty claim. However, as we have just determined, the trial court properly concluded that Chrysler did not warrant title to the Wash Pac Unit. Because no warranty existed, there could be no breach of warranty giving rise to a claim for indemnification. As a result, we find that inherent in the trial court's determination that Chrysler did not warrant title is a determination that Landmark is not entitled to indemnification from Chrysler, thus, the trial court did not err in failing to make specific findings on this issue.[4]

Notwithstanding our decision that the trial court properly concluded that Chrysler did not warrant title to the Wash Pac Unit, even if we were to find that Chrysler did in fact warrant title and subsequently breached that warranty, Landmark would not be entitled to damages beyond those ordered by the trial court. Here, the trial court awarded Landmark $1,060.00 for the purchase price of the Wash Pac Unit bought at the auction, plus $690.00 in costs for transporting the unit. However, Landmark argues that it was enti-

tled to recover the fair market value of a new Wash Pac Unit, rather than the purchase price of the used unit it purchased at the auction. We disagree.

██ Pursuant to KY.REV.STAT. ANN. §§ 355.2–714(2) and (3), the proper measure of damages for a breach of the warranty of title is recovery of the purchase price of the goods plus any incidental and consequential damages recoverable under KY.REV.STAT.ANN. § 355.2–715.[5] K.R.S. § 355.2–715 provides:

(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

(2) Consequential damages resulting from the seller's breach include

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty.

Thus, pursuant to K.R.S. § 355.2–714(2), Landmark was only entitled to recover the purchase price of the Wash Pac Unit that it bought at the auction, and not the fair market value of a new unit.

Nevertheless, Landmark claims that, in addition to the transportation costs awarded

trial court's conclusion that Chrysler did not warrant title was clearly erroneous.

4. We note that throughout its appellate brief, Landmark lays blame on Chrysler for the attorney fees and costs Landmark incurred as a result of the litigation. Specifically, Landmark asserts that prior to trial, Chrysler maintained that Landmark was a bona fide purchaser of the Wash Pac Unit and that Landmark relied upon Chrysler's assertions in pursuing the litigation. However, we find that Landmark's attribution of fault is misplaced. Landmark seems to forget

that after learning of Brite–O–Matic's claim to the Wash Pac Unit, Chrysler immediately informed Landmark of the claim and offered to refund Landmark's money in return for the unit. Landmark refused to accept Chrysler's offer and return the Wash Pac Unit, which resulted in Brite–O–Matic filing suit. Thus, Landmark's actions, not Chrysler's, prompted the litigation.

5. Indiana has adopted these Uniform Commercial Code provisions at IND.CODE §§ 26–1–2–714 and 26–1–2–715.

by the trial court, it is also entitled to recover incidental and consequential damages that it incurred as a result of the replevin of the Wash Pac Unit. Specifically, Landmark seeks damages for the cost of hiring an additional employee to wash cars by hand. However, to be entitled to recover, Landmark has the burden to demonstrate that this expense is one which Chrysler had reason to know and which could not reasonably be prevented by cover or otherwise. K.R.S. § 355.2–715(2)(a). Here, the record reveals that at the time of the auction, Landmark was already leasing a Wash Pac Unit from Brite-O–Matic. Further, Landmark had no contact with Chrysler prior to or at the auction. Thus, we hold that the trial court could have reasonably concluded that the costs of hiring an individual to hand wash cars was not a loss resulting from Landmark's needs that Chrysler had reason to know of at the time it sold the Wash Pac Unit to Landmark. As a result, Landmark has not met its burden and is not entitled to recover such damages.

Finally, Landmark claims that it was entitled to recover attorney fees and costs as incidental and consequential damages under K.R.S. § 355.2–715. However, Kentucky law does not permit such a recovery. In *Nick's Auto Sales, Inc. v. Radcliff Auto Sales, Inc., C.M.*, 591 S.W.2d 709, 711 (Ky.App.1979), the Kentucky Court of Appeals held that attorneys fees are not recoverable as incidental and consequential damages under K.R.S. § 355.2–715 of the Uniform Commercial Code.

In conclusion, we hold that Chrysler did not warrant title of the Wash Pac Unit to Landmark, and even if it did warrant title and the warranty was breached, Landmark would not be entitled to recover damages beyond those already ordered by the trial court.

Judgment affirmed.

CHEZEM and STATON, JJ., concur.